UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DMC MACHINERY AMERICA, CORP., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-cv-269 |
| HEARTLAND MACHINE & ENGINEERING, LLC; FFG DMC CO., LTD.; HANHWA CORPORATION; and ILRIM NANO TEC CO., LTD., | ) Judge John W. Darrah |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On October 26, 2015, Plaintiff, DMC Machinery America, Corp. ("DMCA"), filed a Complaint against Defendants Heartland Machine & Engineering, LLC ("Heartland"); FFG DMC Co., Ltd. ("FFG"); Hanhwa Corporation; and Ilrim Nano Tec Co., Ltd. ("Ilrim"). The Complaint alleges one count of tortious interference, Count II, against Heartland and one count of breach of contract, Count IV, against Heartland. Heartland filed a Motion to Dismiss [6] these counts pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's Motion to Dismiss [6] is denied.

## BACKGROUND

DMCA is a Michigan Corporation, registered to conduct business in Illinois that imports and distributes computer numerical control ("CNC") machine tools. (Compl. ¶ 1.) Heartland is an Indiana limited liability company that sells and services CNC machine tools. (*Id.* at ¶ 2.) FFG is a Korean CNC machine manufacturing company that exports and sells its products in the United States. (*Id.* at ¶ 3.) Hanhwa is a Korean corporation that exports CNC machine tools

1

internationally, including in the United States. (*Id.* at ¶ 4.) Ilrim is a Korean CNC machine manufacturing company that exports and sells its machine tools in the United States. (*Id.* at ¶ 5.)

DMC Co., Ltd. ("DMC") is a Korean CNC machine tool manufacturer that established DMCA in August 2012. (*Id.* at ¶ 9.) DMCA, since its organization, has operated as the exclusive importer and master distributor of DMC products in the United States. (*Id.* at ¶ 10.) DMCA distributes DMC products in the United States through several dealers. (*Id.* at ¶ 11.) Heartland purchases DMC products from DMCA and sells them to customers located in Indiana, Ohio, Michigan, and Kentucky. (*Id.*)

On October 23, 2014, DMC spun-off its machinery division and established a separate entity named FFG DMC Co., Ltd., which now produces the CNC machine tools. (*Id.* at ¶ 16, 17.) FFG was created when DMC entered into an agreement with Fair Friend Enterprises Co. Ltd. (*Id.* at ¶ 17.) The agreement was called "Investment Agreement for M&A of Machinery Division of Daehan Machinery Corporation." (the "Investment Agreement). (*Id.*) In Article 2(e), the Investment Agreement states that "[a]ny contracts entered into by DMC as a contracting party related to the machinery division shall be transferred to [FFG DMC]." (Compl. Exh. 3, p. 16.)

On January 28, 2015, DMC entered into a Share Transfer Agreement with Ilrim and sold all DMCA shares to Ilrim. (*Id.* at ¶ 12.) In Article 3, ¶ 4, the Share Transfer Agreement stated that "[DMC] shall maintain the dealer network and distributorship of DMCA in the American market . . . for 10 years." (Compl. Exh. 1, p. 3.) In Article 3, ¶ 8, the Share Transfer Agreement also states that the obligations of Article 3 shall be effective "[no] matter whether [Ilrim] transfers the shares of DMCA to a third party." (*Id.* at p. 4.) On the same date, DMC and Ilrim also executed an Export Agency Agreement. The Export Agency Agreement, in Article 5, ¶ 2,

2

states that DMC "shall respect the dealer network and the sales agency right of DMCA . . . in the American market . . . and acknowledge [Ilrim's] exclusive export agency status for 5 years from the date when this Agreement was made." (Compl. Exh. 2, p. 4.)  The Complaint alleges that DMC and Ilrim intended to maintain DMCA's status as the exclusive importer and master distributor of DMC products in the United States.  (Compl., ¶ 13.)

In September 2015, DMCA learned that FFG was selling CNC machine tools to Hanhwa and that Hanhwa was selling machines to Heartland.  (*Id.* at ¶ 20.)  DMCA met with Heartland and confirmed that Heartland was purchasing CNC machine tools through Hanhwa from FFG.  (*Id.* at ¶ 21.)  On January 6, 2016, DMCA received an e-mail from one of their dealers, stating that FFG had told the dealer that Heartland is "in charge of [the] North [A]merican market." (*Id.* at ¶ 22.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must allege enough facts to support a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff.  *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013).  This presumption is not extended to 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v.*

*Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). Plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). But, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

## ANALYSIS

### *Count II – Tortious Interference*

In Count II, Plaintiff alleges tortious interference with contractual relationships. To state a claim for tortious interference with a contractual relationship, DMCA must plead: "(1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005). Plaintiff alleges that Heartland had knowledge of the Export Agency Agreement and that Heartland knew their purchase of FFG products through Hanhwa was a breach of the Export Agency Agreement. (Compl., ¶ 38.) Plaintiff further alleges that Heartland is purchasing FFG products through Hanhwa to interfere with Plaintiff's business, drive Plaintiff out of the market, and become the exclusive importer and distributor of FFG products. (*Id.* at ¶ 42.)

Heartland argues that Plaintiff has not sufficiently pled that a valid, exclusive distribution agreement between FFG and DMCA exists. The Share Transfer Agreement stated that DMC "shall maintain the dealer network and distributorship of DMCA in the American market . . . for 10 years." (Compl. Exh. 1, p. 3.) Additionally, the Export Agency Agreement states that DMC "shall respect the dealer network and the sales agency right of DMCA . . . in the American

4

market." (Compl. Exh. 2, p. 4.) Plaintiff further alleged that it has operated as the exclusive importer and master distributor of DMC products in the United States since it was organized. (Compl., ¶ 10.) Reading all inferences in the light most favorable to Plaintiff, the obligation to maintain the dealer network, distributorship, and sales agency right referred to in the Share Transfer Agreement and the Export Agency Agreement sufficiently sets out DMCA's exclusive rights. *See Lavalais*, 734 F.3d at 632. Those rights are applicable to FFG because Article 2(e) of the Investment Agreement states that "[a]ny contracts entered into by DMC as a contracting party related to the machinery division shall be transferred to [FFG DMC]." (Compl. Exh. 3, p. 16.) Plaintiff has sufficiently alleged the existence of a valid, exclusive distribution agreement between FFG and DMCA for the purposes of a motion to dismiss.

Heartland's Motion to Dismiss [6] is denied as to Count II.

*Count IV – Breach of Contract*

In Count IV, Plaintiff alleges a claim for breach of contract against Heartland. "The elements of a claim for breach of contract are: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a material breach by the defendant; and (4) damages." *Balmoral Racing Club, Inc. v. Churchill Downs, Inc.*, 953 F. Supp. 2d 885, 895 (N.D. Ill. 2013). Plaintiff alleges that Heartland offered to purchase machine tools and parts from Plaintiff and that Plaintiff accepted and delivered the machine tools and parts. (Compl. ¶¶ 53-54.) Heartland did not pay for the products, did not return the products, and did not identify any defects or deficiencies. (*Id.* at ¶¶ 55-56.) Plaintiff further alleges that Heartland owes Plaintiff $352,669.45. (*Id.* at ¶ 58.) Plaintiff attached an account statement to the Complaint. (Compl. Exh. 4.)

Heartland asserts that Plaintiff has not sufficiently pled a breach of contract. A plaintiff must do more than allege 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' *Alam*, 709 F.3d at 666 (quoting *Brooks,* 578 F.3d at 581). Plaintiff has provided an account statement which states the invoice numbers as well as the dates for several orders. (Compl. Exh. 4.) A complaint must only provide a defendant with fair notice of the claim and its basis. *Tamayo*, 526 F.3d at 1081. The allegations of the Complaint, together with the account statement, provide fair notice of the breach of contract claim and its basis.

Heartland's Motion to Dismiss [6] is denied as to Count IV.

## CONCLUSION

For the reasons stated above, Heartland's Motion to Dismiss [6] is denied.

Date:     September 8, 2016    

JOHN W. DARRAH
United States District Court Judge