UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DMC MACHINERY AMERICA, CORP., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 16-cv-269 |
| HEARTLAND MACHINE & ) | |
| ENGINEERING, LLC; ) | Judge John W. Darrah |
| FFG DMC CO., LTD.; ) | |
| HANHWA CORPORATION; and ) | |
| ILRIM NANO TEC CO., LTD., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On October 26, 2015, Plaintiff, DMC Machinery America, Corp. ("DMCA"), filed a Complaint against Defendants, Heartland Machine & Engineering, LLC ("Heartland"); FFG DMC Co., Ltd. ("FFG"); Hanhwa Corporation; and Ilrim Nano Tec Co., Ltd. ("Ilrim"). The Complaint alleges one count of breach of contract, Count I, against FFG and Ilrim. FFG filed a Motion to Dismiss [37] Count I pursuant to *forum non conveniens* and Federal Rule of Civil Procedure 12(b)(6). FFG's Motion to Dismiss [37] pursuant to *forum non conveniens* is granted.

## BACKGROUND

DMCA is a Michigan corporation registered to conduct business in Illinois that imports and distributes computer numerical control ("CNC") machine tools. (Compl. ¶ 1.) Heartland is an Indiana limited-liability company that sells and services CNC machine tools. (*Id.* at ¶ 2.) FFG is a Korean CNC machine manufacturing company that exports and sells its products in the United States. (*Id.* at ¶ 3.) Hanhwa is a Korean corporation that exports CNC machine tools

1

internationally, including in the United States. (*Id.* at ¶ 4.) Ilrim is a Korean CNC machine manufacturing company that exports and sells its machine tools in the United States. (*Id.* at ¶ 5.)

DMC Co., Ltd. ("DMC") is a Korean CNC machine tool manufacturer that established DMCA in August 2012. (*Id.* at ¶ 9.) DMCA, since its organization, has operated as the exclusive importer and master distributor of DMC products in the United States. (*Id.* at ¶ 10.) DMCA distributes DMC products in the United States through several dealers. (*Id.* at ¶ 11.) Heartland purchases DMC products from DMCA and sells them to customers located in Indiana, Ohio, Michigan, and Kentucky. (*Id.*)

On October 23, 2014, DMC spun-off its machinery division and established a separate entity named, FFG DMC Co., Ltd. ("FFG"), which now produces the CNC machine tools. (*Id.* at ¶¶ 16, 17.) FFG was created when DMC entered into an agreement with Fair Friend Enterprises Co. Ltd. (*Id.* at ¶ 17.) The agreement was called "Investment Agreement for M&A of Machinery Division of Daehan Machinery Corporation" (the "Investment Agreement"). (*Id.*) In Article 2(e), the Investment Agreement states that "[a]ny contracts entered into by DMC as a contracting party related to the machinery division shall be transferred to [FFG DMC]." (Compl. Exh. 3, p. 16.)

On January 28, 2015, DMC entered into a Share Transfer Agreement with Ilrim and sold all DMCA shares to Ilrim. (*Id.* at ¶ 12.) In Article 3, ¶ 4, the Share Transfer Agreement states that "[DMC] shall maintain the dealer network and distributorship of DMCA in the American market . . . for 10 years." (Compl. Exh. 1, p. 3.) In Article 3, ¶ 8, the Share Transfer Agreement also states that the obligations of Article 3 shall be effective "[no] matter whether [Ilrim] transfers the shares of DMCA to a third party." (*Id.* at p. 4.) In Article 7, the Share Transfer Agreement states: "If [the parties are] required to file litigations [sic] on any right and obligation

prescribed by this Agreement, Changwon District Court shall have the exclusive jurisdiction over the first instance trials." (*Id.* at p. 5.)

On the same date, DMC and Ilrim also executed an Export Agency Agreement. The Export Agency Agreement, in Article 5, ¶ 2, states that DMC "shall respect the dealer network and the sales agency right of DMCA . . . in the American market . . . and acknowledge [Ilrim's] exclusive export agency status for 5 years from the date when this Agreement was made." (Compl. Exh. 2, p. 4.) In Article 9, the Export Agency Agreement states: "If [the parties are] required to file litigations [sic] on any right and obligation prescribed by this Agreement, Chan[g]won District Court shall have the exclusive jurisdiction over the first instance trials." (*Id.* at p. 4.)

The Complaint alleges that DMC and Ilrim intended to maintain DMCA's status as the exclusive importer and master distributor of DMC products in the United States. (Compl., ¶ 13.) In September 2015, DMCA learned that FFG was selling CNC machine tools to Hanhwa and that Hanhwa was selling machines to Heartland. (*Id.* at ¶ 20.) DMCA met with Heartland and confirmed that Heartland was purchasing CNC machine tools through Hanhwa from FFG. (*Id.* at ¶ 21.) On January 6, 2016, DMCA received an e-mail from one of their dealers, stating that FFG had told the dealer that Heartland is "in charge of [the] North [A]merican market." (*Id.* at ¶ 22.)

## LEGAL STANDARD

The appropriate method for enforcing "a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013). When a defendant files a motion to dismiss under the doctrine of *forum non conveniens* pursuant to a mandatory forum-selection clause, "a district court should transfer the case unless extraordinary circumstances

3

unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575. The plaintiff bears the burden of establishing that a transfer is unwarranted. *Id.* at 581. When evaluating a mandatory forum-selection clause: (1) the plaintiff's choice of forum is given no weight; (2) private-interest factors are given no weight, as the court may only consider public-interest factors; and (3) a § 1404(a) transfer based on a forum-selection clause does not carry with it the original venue's choice-of-law rules. *Atl. Marine*, 134 S. Ct. at 581-83.

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must allege enough facts to support a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). All well-pleaded allegations are presumed to be true, and all inferences are read in the light most favorable to the plaintiff. *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). Plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

**ANALYSIS**

*Forum Non Conveniens*

FFG first moves that it should be dismissed under the doctrine of *forum non conveniens* pursuant to a mandatory forum-selection clause. Both the Share Transfer Agreement and the Export Agency Agreement contain the same "Jurisdiction Over Litigations [sic]" article: "If [the parties are] required to file litigations [sic] on any right and obligation prescribed by this Agreement, Chan[g]won District Court shall have the exclusive jurisdiction over the first instance trials." This is clearly a mandatory forum-selection clause. The validity of a forum-selection clause "depends on the law of the jurisdiction whose rules will govern the rest of the dispute." *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008); *see also Exhibit Sys., Inc. v. Pico Art Int'l Pte., Ltd.*, 2015 WL 3930265, at *2 (N.D. Ill. June 25, 2015). The Share Transfer Agreement provides that it "shall be governed by Korean laws." (Compl. Ex. 1, p. 5.) The Export Agency Agreement does not have a choice-of-law provision.

Mandatory forum-selection clauses are valid and enforceable under both Illinois and federal law. *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006) (citing *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606 (7th Cir. 2006)). Under Korean law, mandatory forum-selection clauses are enforceable.[1] *See*

---

[1] Under Federal Rule of Civil Procedure 44.1, a court may determine foreign law. "The rule permits foreign law to be proved by testimony or affidavits of experts, and that is the route followed in most cases. But it also permits judges to consult other sources of foreign law, such as articles, treatises, and judicial opinions." *Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495 (7th Cir. 2009). Plaintiff challenges the affidavit of Duk Jin Hwang, arguing that there is no reason to believe that he is an expert in Korean law and "[w]e don't know what it means to be an 'attorney' in Korea." (Def.'s Resp. p. 8.) Plaintiff further incorrectly asserts that there is no indication how long Hwang has practiced, even though the first paragraph of the declaration states that Hwang has practiced law in good standing in Korea since 2005. *See* (Hwang Decl.

*Plaintiff v. Defendant 1 and 1 other*, 2008 WL 8578671, Supreme Court, 2006Da68209, March 13, 2008 (S. Kor.) ("In a case where the parties agree to one specific court of law among several courts of law, with all of which passing as jurisdictional courts of law, it can be interpreted as an agreement determining an exclusive court of law within the country where a legal action is expected to be filed."). Other courts considering this issue have come to the same conclusion. *See Glob. Link, LLC. v. Karamtech Co.*, No. 06-CV-14938, 2007 WL 1343684, at *2 (E.D. Mich. May 8, 2007) (holding that mandatory selection clauses are enforceable under Korean law).

Plaintiff responds that it is not governed by the forum-selection clause because it is a third-party beneficiary. Under federal law, "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993). In the Share Transfer Agreement, DMC sold all shares in Plaintiff to Ilrim. It was eminently foreseeable that Plaintiff would be bound by the forum-selection clause in agreements between DMC and Ilrim. Further, the Share Transfer Agreement and Export Agency Agreement, and Plaintiff's rights thereunder, are the subject of the dispute. The analysis is identical under Illinois law. *See Solargenix Energy, LLC v. Acciona, S.A.*, 2014 IL App (1st) 123403, ¶ 42, 17 N.E.3d 171, 185 (Ill. App. Ct. 2014) (" . . . a court may exercise personal jurisdiction over a defendant by enforcing a forum-selection clause against it, even though it was not a signatory to the contract containing the clause, where it was closely related to the dispute such that it became foreseeable

---

¶ 1.) Plaintiff's argument is entirely unpersuasive. In addition to the affidavit, FFG also provides Korean case-law, as well as an excerpt of the Supreme Court of Korea's "Court Procedure Manual - Civil Trial (1)."

that the nonsignatory would be bound, regardless of whether the non-signatory is a defendant or a plaintiff in the subject litigation."). Under Korean law, "[d]efenses incidental to [a third-party contract] may be set up by the obligor against the third person who is to receive the benefit of the contract." Korean Civil Act, Act No. 471, Feb. 22, 1958, *amended by* Act No. 8720, Dec. 21, 2007, art. 542 (S. Kor.). Under federal, Illinois, and Korean law, a forum-selection clause may be enforced against a third party.

Finally, Plaintiff argues that, even if the forum-selection clause is applicable and enforceable, the factors weigh against dismissal. Plaintiff's arguments about choice of forum and private-interest factors are irrelevant, as these are given no weight, as mentioned above. *Atl. Marine*, 134 S. Ct. at 581-83. Only public-interest factors are relevant. Plaintiff argues that the relevant public policies are: familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale. As to the first factor, the contracts at issue were formed in Korea and Korean courts are doubtlessly more familiar with Korean law. There is no argument either way as to the speed at which the case will proceed to trial. There is some merit to the argument that it is desirable to resolve the issues in North America, but it is not a strong public policy factor. *See Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994) (noting that public policy arguments are based on courts' unwillingness to aid immoral or illegal acts, "[b]ut litigating in England is neither immoral nor illegal . . . .").

Plaintiff further argues that relief is impossible in Korea because one of the Defendants, Heartland, isn't subject to Korean jurisdiction. This may or may not be true, but Defendants FFG and Hanhwa inarguably are subject to Korean jurisdiction as Korean companies. FFG and

7

Hanhwa are the companies allegedly providing the CNC machines to Heartland in violation of the Agreements, and an injunction against them doing so would provide relief to Plaintiff.

The mandatory forum-selection clause is valid and enforceable under federal, Illinois, and Korean law. FFG's Motion to Dismiss [37] Count I pursuant to *forum non conveniens* is granted.

*Rule 12(b)*

FFG alternatively argues that Count I should be dismissed pursuant to Rule 12(b)(6). In Count I, Plaintiff alleges breach of contract by FFG. FFG argues that Plaintiff failed to properly provide notice of breach pursuant to the Illinois Uniform Commercial Code and the plain language of the Agreements. As FFG's Motion was granted on the basis of *forum non conveniens*, it is unnecessary to reach these arguments.

**CONCLUSION**

For the reasons stated above, FFG's Motion to Dismiss [37] pursuant to *forum non conveniens* is granted.

Date:       November 2, 2016           /s/ JOHN W. DARRAH
                                       United States District Court Judge